Argument not to exceed 15 minutes per side. Mr. Eric Sandberg-Zaikin for the appellant. You may proceed. Good morning, your honor. May it please the court, my name is Eric Sandberg-Zaikin and I represent the petitioner-appellant Michael Brizendine and I'd like to reserve two minutes of my time for rebuttal. All right. Thank you. We're here today because of failures by two attorneys. First, collateral review counsel missed filing deadlines by three to four years without explanation. He failed to make a timely investigation of his client's claims. And he failed to make a filing in direct violation of his client's clearly stated wishes. Second, trial counsel, who was defending a robbery charge, didn't examine the physical evidence collected from the scene, even though it included a wallet, which is the precise type of item his client was accused of taking. The warden doesn't dispute that these failures constitute deficient performance. And for good reason. These are textbook examples of deficient performance. At the collateral review level, a complete abandonment of a client's claims. And at the trial level, a failure to examine, investigate, and present key physical evidence. So where does that leave us? We're asking you to find cause to excuse the default and remand for a hearing on prejudice. So looking at cause, again, the warden doesn't dispute the first element, which is that collateral review counsel performed efficiently. And that brings us to the second element, which is whether the underlying claims are substantial, which requires them to merely have some merit. And these claims do have some merit. The factual bases for them are underdeveloped because my client has never been given an evidentiary hearing at the state or federal level. But the limited evidence that's available in the record certainly suggests that further factual development is warranted, particularly on the claim that Mr. Brisenine is presenting, that his trial counsel provided ineffective assistance when he failed to investigate and present evidence, that the police responding to the scene turned out the victim's pockets, confiscated his wallet, and then attributed that conduct to the defendants. And looking at that claim, I propose today that we focus on whether Mr. Brisenine was prejudiced by trial counsel's failure to investigate and present this evidence. Because, again, the warden doesn't dispute that this failure constitutes deficient performance. And, indeed, failing to investigate and present physical evidence that's readily available and of which counsel was or should have been aware was unreasonable under prevailing professional norms. Counsel was under a well-established duty to investigate all relevant leads, as this court held in Blackburn all the way back in 1987. So the question for this court really is whether Mr. Brisenine was prejudiced by this failure. And we think he was prejudiced, and not just for the basic reason that trial counsel missed an opportunity to undercut the only robbery evidence that didn't come from the compromised witness, Ray Joseph. For the much more important reason that this would have served as the cornerstone of trial counsel's central defense that the police investigation was too incompetent and incomplete, particularly from a forensic perspective, and was thus unreliable and couldn't sustain a conviction beyond a reasonable doubt. Now, in making that argument at trial, and this was his central defense, trial counsel essentially relied on two points. One, the police failed to take photographs of the car used in the crime. And, two, the police failed to dust that car for fingerprints. But this defense would have been far more powerful if trial counsel had exposed at trial that the police and the prosecutors had made this mistake, that they'd failed, that they'd turned out the pockets, they'd taken the wallet, and then they'd asserted the wallet had been stolen by the defendants. Now, I'd ask you to look at this from the jury's perspective. The jury's asked to weigh, on the one hand, a case that's essentially built on the testimony of this compromised witness, and they're asked to weigh it against this defense that the police investigation's unreliable. Why do you keep saying the compromised witness? Now, Ray Joseph says, quote, that according to him, your client told him your friends just got shot and robbed. So, Mr. Joseph was compromised. He lied repeatedly about the case. He admitted on the stand that he lied about the case. He changed his story well on the stand multiple times. And most importantly, the jury had serious doubts about his credibility, which you can see from the fact that they didn't find intentional murder here. They would have found intentional murder if they thought Mr. Joseph was an entirely credible witness. I mean, your client's basic defense at trial was, hey, I wasn't even there, right? He is sort of an alibi. I wasn't even at the scene. My client's position, and it's true, is that he was not there and didn't participate. But the central defense the trial counsel put on was that the prosecution hadn't carried its burden beyond a reasonable doubt because this police investigation was so unreliable and so incomplete. And frankly, that case the trial counsel put on was thin. I mean, I think this was not a slam-dunk case from the prosecution, but this defense as presented at trial was fairly thin, too, relying on just these two points about the car. But it would have been exponentially stronger if counsel had exposed this significant mistake by the police and the prosecutors with physical evidence. And if he'd done that, we think there's a real chance that the trial might have come out differently. If the wallet had turned out to be the decedent's wallet. A chance or a reasonable probability? A reasonable probability, although we don't... Isn't that different than a real chance? I mean, you're applying the wrong standard for ineffective assistance of counsel, are you not? I think the right standard, Your Honor, I agree, is a reasonable probability, which is not more likely than not. Probability is more than a chance. It's more probable than not, and it has to be reasonable, too. It is not more probable than not, Your Honor. Strickland itself says that to show prejudice you do not have to show that it's more likely than not. You have to show that it's a reasonable probability. Isn't probability more... Isn't that the definition of probability, it's more probable than not? So I share the sense that probability may not be the best word, but Strickland explicitly says you do not need to show that it's more likely than not. But regardless, at this stage of the proceeding, for the purposes of showing cause, we don't even have to show that. We have to show just that there's some merit to this idea. Judge Gilman, I'm sorry to interrupt you. No, that was okay. I mean, I guess that your defense is largely based on that the wallet was Mr. Nash's wallet. Correct. But we don't know that at this point. We don't know that, and that's why we don't think we can show prejudice at this stage. We think that the appropriate disposition here is to remand for an evidentiary hearing on prejudice. All we have to show is that there is some merit to this argument, and we would suggest that under Townsend that our client is entitled to an evidentiary hearing on this question. Why are we not bound by AEDPA's double deference here? You're not bound by AEDPA at all, Your Honor. AEDPA cuts back Townsend in many respects, but not on the question of when to hold evidentiary hearings on uniquely federal questions like cause and prejudice, and that's what the 11th Circuit said in Williams v. Turpin, and I'd like to read that language. The 11th Circuit said a petitioner is entitled to an evidentiary hearing for purposes of establishing cause and prejudice if he can proffer specific facts sufficient to support such a finding. And in this case, Mr. Brisenine has certainly proffered specific facts that would support a finding of cause and prejudice, and the warden may dispute those facts, the warden may disagree with those facts, but Mr. Brisenine has unassuredly proffered them, and we would ask that on the basis of that, this Court follows the 11th Circuit and rules that under Townsend an evidentiary hearing is required. And we think that if you disagree with that, if you hold us to a higher standard, we feel we can meet it. We think we have a very strong case that there is some merit to the idea that if we pursue this evidence, that we will be able to show that there was a reasonable probability that the case would have come out differently, and that we can't be fully confident in this verdict. And although it's outside the record, because my client has not had an evidentiary hearing, we certainly have evidence to put on on this point if we're given a chance, including from Alex Fleming, the trial counsel himself. So we believe that under Townsend our client is entitled to a hearing, that EDPA or the subsequent cases cutting back Townsend in other respects don't at all take away that right, and that when we're given the chance for that evidentiary hearing on prejudice, we will be able to show prejudice. And we certainly accept that at this stage the record doesn't show prejudice. It doesn't meet the strong showing under Strickland, but that's not at all surprising, because my client has never been given a chance to present evidence on these points. And I do, Judge Gilman, I do want to just return to a question you asked earlier. It is certainly my client's contention, and it's true, that he is innocent and that he was not there. But that was not the central strategy that defense counsel pursued at trial. The central strategy that defense counsel pursued was to show that the police investigation was incompetent, incomplete, and thus that the prosecution couldn't carry its burden by relying on that investigation. And trial counsel presented a pretty thin version of that defense. But if he had shown this really significant mistake, that they disturbed the scene, that they took the wallet and then said the wallet was stolen,  and we can't be confident in the verdict that the jury reached that it was correct without having seen that evidence, the evidence that was readily available and of which trial counsel was aware or should have been aware. If there are no other additional questions, I'm inclined to let our briefs speak for us on the other issues and reserve the balance of our time for rebuttal. Thank you. Thank you, Your Honor. It pleases the Court. Your Honors, the appellant continues to talk about some merit. We don't dispute that there was cause for post-conviction counsel. Yes, he was ineffective, but the question then is, was he prejudiced? Did this prejudice in some way the defendant or the appellant? No, it did not. I mean, he has to show that there is some substantial ineffective assistance of trial counsel claim, and that's simply what he cannot and does not show in his argument, either in his brief or here today. He continues to talk about the wallet. He hasn't mentioned at all the second issue, which was the EED defense, and probably because that's a much weaker argument that he has. There was simply no reason whatsoever to give an EED instruction under Kentucky law. An EED instruction requires that there has to be some type of enraged state of mind or disturbed or inflamed state of mind that overcomes your judgment. Also, there has to be a triggering event. The testimony that was given was that they came into the apartment, Mr. Brizendine and Mr. Hobbs along with Mr. Joseph, and then Mr. Brizendine went to the back of the apartment when they heard someone else was in there. They brought him out. Then they were told they would have to wait a few minutes before the drugs were brought to them. At that point, Mr. Brizendine and Mr. Hobbs brought out guns. They took Mr. Nash and Mr. Wilson, put them on the ground, and when those guns were brought out and they put them on the ground, Mr. Hobbs says he ran out of the house, and as he ran out, he heard shots. Mr. Hobbs, Mr. Joseph. Mr. Joseph, I'm sorry. Mr. Joseph ran out of the house, and he heard shots being fired. All this is based on the testimony of Mr. Joseph, right? It is, yes, Your Honor. I mean, the appellant says that the jury would have found intentional murder if they hadn't really believed Mr. Joseph, but no, they would have if they hadn't believed him. But if they hadn't believed Mr. Joseph, they wouldn't have found anything at all. I mean, the jury clearly believed him to be a credible witness because they found them guilty of murder based quite a bit on his testimony, not solely but quite a bit on his testimony. But there clearly is no reason here to show prejudice under the EED defense. Rather than say they found him credible or not, I mean, isn't the third option that it was a compromise verdict, that the jury compromised, well, we're not going to find intentional murder, but we're going to find felony murder, and the jury does that all the time. That's very possible, Judge Griffin, but it doesn't go at all to the issue here today about whether there needs to be prejudice that is shown that needs to be sent back than to have a hearing in some manner. But they say they need a hearing to establish prejudice. They can't prove prejudice without a hearing, and they say their allegations that they may be able to show prejudice in a hearing have some merit, and therefore they have a right to get the evidentiary hearing. Well, I would disagree with that, and, of course, because I don't think they've actually shown anything here to demonstrate that they could even prove something further. They've made some conclusory allegation. What they're arguing is that there was testimony by a detective, James Clark, who was the lead detective, who said that he took a picture of Mr. Nash's pocket being turned out because he was a little concerned about that. If you look at the context of when that was said, it perhaps meant he was concerned about someone moving the wallet. It may simply have been that he was concerned that they take a picture of it because it was important. Concerned that the scene may have been disturbed by the police. That's correct. That's the argument that's made by the appellant, yes, that it may have been disturbed by the police. But that's a conclusory allegation they make. They don't present here any type of affidavit from the first responders of any sort to say something would have happened, you know, we would have testified differently. They're just speculating that they might have said so. And what they're saying is the defense attorney should have made this examination at trial. But as I believe you, Judge Gilman, pointed out, Mr. Brizendine's entire defense was that he wasn't there. Or actually, more specifically, his defense was the Commonwealth could not prove that I was there. He didn't put on any witnesses whatsoever. He simply relied on the Commonwealth failing to make their case, which they did not. The jury believed their case. They looked at the evidence and they found Mr. Brizendine and Mr. Hobbs both guilty of wanton murder. So when they have this wallet or this turned-out pocket, then that simply is something that doesn't go to the testimony of Mr. Joseph, who is the main witness for the Commonwealth at this point. And furthermore, as the Kentucky Supreme Court noted and as the magistrate judge recommended and the district judge adopted, these are insubstantial claims because there's other evidence that this robbery occurred, evidence being that Mr. Brizendine carried out a bag that had the cocaine in it, according to Mr. Joseph. He said he carried this bag out. Wait a minute. Mr. Joseph never saw what was in the bag. He did not, but that was enough for the jury to believe that because later on they found this same bag containing cocaine in Mr. Hobbs. The bag was not in Mr. Brizendine's apartment. It was in Mr. It was in Mr. Hobbs, but again, that goes back to the credibility of Mr. Joseph. And all this goes to, again, whether there is reason for prejudice here, to show prejudice. To show prejudice, you have to go through the Strickland Standard. The appellant continues to say that we have to show there's some merit here, that there's some merit. And he said at some point that he shouldn't be held to a higher standard. Well, he should be held to the proper standard. And the proper standard, which to his credit he points out in his brief, is shown in the Ninth Circuit case of the Claiborne v. Ryan, and that's the same standard this court has adopted already, which is to go into the merit of the ineffective assistance of trial counsel claim and look and see was the trial counsel deficient and did that deficiency prejudice the appellant. He wasn't deficient in this case because his client was saying, I'm not there. So what good would it have been for him to further investigate this? I thought you started your argument by conceding that he was deficient and the only issue was prejudice. No, Your Honor. I was conceding that the post-conviction counsel was deficient. But once you get through the post-conviction counsel being deficient, then the prejudice prong requires you to look at the ineffective assistance of trial counsel claim. So the trial counsel was neither deficient by failing to investigate the wallet or failing to ask for an EED instruction. There was no deficiency. And that deficiency, even if there was a deficiency about the wallet, there was no prejudice because there was other evidence. What if the wallet turns out to have been Mr. Nash's wallet? Wouldn't that be the inference then that, hey, that Brizendine didn't rob him because the wallet was right there, and, in fact, it was probably then taken out to the police just to check on the identification of the decedent? It could have been. But what if the wallet turns out in some way to be inculpatory and not exculpatory? Well, that's the risk, but that's what an evidentiary hearing might. Well, it might. But at the same time, what you're deciding here is whether the counsel was deficient in or in doing this. And the counsel is said to be reasonable, and looking at it in an objective way, he's presumed to have trial strategy that we're to give great deference to. Well, what trial strategy is there to not investigate? I mean, the argument is that trial counsel should investigate everything about the scene, and here I guess there was no investigation because trial counsel didn't look into it. I mean, isn't there a duty to do basic investigation? There is a duty to investigate. Okay, and how was there investigation here? I mean, there was no strategic decision made by trial counsel not to look into the wallet or the pockets. I mean, just, was there? Well, there was no evidence to that, but there's no evidence that they decided not to strategically. I mean, his client was saying he wasn't there. So he was relying on the Commonwealth having to put on enough proof to show that his client was guilty. Okay, so the client says I'm not there, but, I mean, trial counsel, you'd think, might want to have some backup defenses as well. I mean, I'm troubled by the lack of investigation. We don't know whose wallet that was. There's a wallet found. Well, even as Judge Gilman said, even if the wallet had asked me, what is Mr. Nash's wallet? Well, it's Mr. Nash's wallet. There was another victim there. There was a pair of blue jeans. The Commonwealth attorney who did the case in closing argument pointed out the pulled-out pocket, yes, but he also pointed out the fact that there was a pair of blue jeans, someone else's, that was thrown on top of Mr. Wilson, and he made the argument that they had gone through different people's pockets looking for wallets and looking for something to take with them as they were going. You had that along with the testimony of Mr. Joseph that they had come in there without, that he never saw any money on Mr. Brizendine or Mr. Hobbs. They leave with the bag, the Tommy Hilfiger bag that then later is found with Mr. Hobbs, and you have evidence that is separate from whether there was a wallet there or not. The question is, absent this deficient performance, would the outcome, is there a reasonable probability that the outcome of the proceeding would have been different? And if this trial had proceeded and there had never been an outturned pocket, I don't see how there's a reasonable probability that the outcome would have been any different based on the testimony of Mr. Joseph and all the other surrounding circumstances. All we do is we leave out, there's not that outturned pocket, and there's not that wallet. If you take those two pieces out, I don't see how there's a reasonable probability that the jury is swayed by those two pieces of evidence in this case. So I think that's the only thing that we can talk about. Again, the E&D instruction, there's simply nothing of merit or substantial about that because Mr. Hobbs asked for an E&D instruction and was rejected by the court because there simply was no information for an E&D instruction to be based on, no evidence there. And here, again, the appellants have not shown any kind of evidence to base this on. All this is just simply speculation that they have. They need to have more than that. They seem to argue that as long as they proffer some particular facts, that if they can offer a fact, then we're supposed to send it back for an evidentiary hearing. That's not true. This court has said in Stanford v. Parker that even in death penalty cases, bald assertions and conclusory allegations don't warrant discovery or evidentiary hearing. This is the same as someone saying, I had five alibi witnesses that would have put me somewhere else, but my attorney wouldn't call them. But you don't present any evidence of these people. We don't send that back down to have all these five alibi witnesses put on the stand. Same thing is happening here. There was no deficiency. It was a trial strategy. It was because there was no evidence. The defense attorney was saying his client wasn't there. So whether there was a wallet missing or not doesn't go to that. Mr. Joseph didn't testify to the wallet missing. He testified to Brizendine and Hobbs being at the scene, having the guns, and then doing the shooting or hearing the shots as he left the apartment. There's no further questions? Thank you. Thank you very much. Thank you. Counsel, by the way, did you ask for an evidentiary hearing in the court below? Yes, absolutely, Your Honor, and it was not granted. There's a point I'd like to make about that. We still haven't heard from the warden what he thinks the standard is for granting an evidentiary hearing, and the court below didn't articulate it. And the correct standard is the standard from Williams of proffering specific facts, and Williams was the exact same situation that opposing counsel was just criticizing where you come forward and you say, I can present witnesses who will say that this happened or there is physical evidence that this failure occurred, and then you get a chance to present that. And that's because, as we all know, Townsend was incredibly broad. Townsend required mandatory hearings in very, very broad situations, and I think that's why Congress saw fit to cut it back in many ways, but not in this way. So we benefit from a very, very broad standard here, and the warden hasn't articulated an alternative standard. This is the first time in this argument that we've heard the state suggest that failing to look at physical evidence taken from the scene when you're defending a robbery charge is not deficient performance, and I don't think that's credible. I think if you're defending a robbery charge, you need to look at the physical evidence from the scene. You need to investigate all relevant leads, particularly when you are in possession of a list that says a wallet was confiscated from the scene and your client is accused of taking a wallet. And finally, I'd just like to say that all of the other evidence of robbery in this trial actually exculpated our client because it tied Hobbs to the robbery, and Hobbs said that he did it with Joseph Hullo. And my last point would just be that opposing counsel seems dismissive of the some merit standard, but Martinez and the Supreme Court have said that we just have to show these claims are substantial, that just require some merit, and we think we've done that. Thank you. Counsel, I see that you were appointed pursuant to the Criminal Justice Act, and I know you accept that assignment and are so serious to the court and our system of justice, so I want to thank you for doing that. The client was well represented. My pleasure. Thank you. It's an honor to be here. Thank you.